**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 07 2013, 8:27 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**CHRISTINA D. PACE**
DCS Hendricks County
Avon, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF K.W. and B.W., CHILDREN IN NEED OF SERVICES; | ) ) ) |
| A.W., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 32A05-1210-JC-537 ) |
| INDIANA DEPARMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Jeffrey V. Boles, Judge
Cause Nos. 32C01-1206-JC-11 and 32C01-1206-JC-12

**March 7, 2013**

**BRADFORD, Judge**

Appellee-Petitioner the Department of Child Services ("DCS") removed minor children K.W. and B.W. (collectively, "the Children") from their parents' home after K.W. suffered non-accidental and unexplained injuries while in his parents' care. The Children were adjudicated Children in Need of Services ("CHINS"), and the juvenile court approved their temporary placement with the Children's maternal grandparents ("Maternal Grandparents") in Avon. DCS subsequently recommended, and the juvenile court approved, Maternal Grandparents' relocation with the Children to Wisconsin ("the Wisconsin Placement").

The Children's father, Appellant-Respondent A.W. ("Father"), appeals the court's approval of the Wisconsin Placement, arguing that DCS failed to make reasonable efforts to reunite the family and that the placement does not provide the least restrictive and disruptive setting available. Finding sufficient evidence that the Wisconsin Placement is in the Children's best interests, we conclude that that court's approval is not clearly erroneous. Father also argues that the trial court violated Indiana Code section 31-34-20-1(b) by approving an out-of-state placement without the recommendation of the DCS director or the director's designee. We find that the family case manager's ("FCM") recommendation of the Wisconsin Placement satisfies this statutory requirement and affirm the judgment of the juvenile court.

## FACTS AND PROCEDURAL HISTORY

Five-week-old K.W. and his one-year-old sister, B.W., lived in Avon with Father

and their mother, R.R. ("Mother").  On June 1, 2012, DCS received a report that Mother had taken K.W. to the hospital due to a swollen ear.  A medical examination revealed that K.W. suffered from

> multiple injuries over space and time with no explanation:  auricular hematoma acute [("cauliflower ear")], healed torn frenulum, healing radius, ulna, and clavicle fractures for more than two weeks.  The bruising on the chest is current.  Torn frenulum requires blunt force to mouth and is not related to either bleeding or bone disease.  This pattern, constellation and timing of injuries indicates repeated inflicted trauma in the absence of any plausible accidental explanation.

Appellant's App. p. 18.  Mother and Father denied knowing the source of K.W.'s injuries but admitted that K.W. had not been out of their care since birth.

Given the "non-accidental" nature of K.W.'s injuries, Appellant's App. p. 26, DCS removed K.W. and B.W.[1] from Mother and Father's home.  DCS found both Maternal Grandparents' home in Avon and the Children's paternal grandmother's ("Paternal Grandmother") home in Indianapolis to be suitable placement options, but it chose to place the Children with Maternal Grandparents because they lived approximately one mile from Mother and Father's home.

On June 4, 2012, DCS filed a petition requesting that the Children be adjudicated CHINS, and the juvenile court appointed Melissa Sauer as their Guardian Ad Litem ("GAL").  Mother and Father admitted to the CHINS allegations on August 23, 2012, and a dispositional hearing was scheduled for September 27, 2012.  Prior to the dispositional hearing, the Children's maternal grandfather accepted a job promotion that required Maternal Grandparents' relocation to Ellsworth, Wisconsin, approximately 540 miles or a

---

[1] An examination of B.W. on June 1, 2012, revealed "no physical health concerns."  Appellant's App. p. 21.

nine-and-one-half-hour drive from Avon. On September 14, 2012, DCS filed a motion for an emergency hearing to determine whether the Children could continue their placement with Maternal Grandparents and relocate with them to Wisconsin. The juvenile court set the matter for a hearing on September 20, 2012, and DCS filed its predispositional report on that date.

In its predispositional report, DCS recommended that the Children continue their placement with Maternal Grandparents, finding that "they play an active role as family members to the children and have had a relationship throughout the children's lives." Appellant's App. p. 55. DCS also recommended that Mother and Father exercise parenting time with the Children and listed "reunification" as the Children's permanency plan. Appellant's App. p. 58. The predispostional report was signed by FCM Ayriane Bailey and her DCS supervisor, Jessica Klatte.

At the emergency hearing on September 20, 2012, the juvenile court was advised that Mother planned to move to Wisconsin and live near Maternal Grandparents and that she approved of the Wisconsin Placement. Father testified in opposition to the placement, claiming he would lose his parenting time with the Children because he was unemployed and could not afford transportation and lodging costs. Father proposed Paternal Grandmother as an alternative placement for the Children. Like Maternal Grandparents, Paternal Grandmother had been an active part of the Children's lives since their births, was able to care for and financially support the Children, and had been approved as a possible placement by DCS.

DCS presented the testimony of FCM Bailey, who opined that it is in the

4

Children's "best interests" to continue their placement with Maternal Grandparents, despite their relocation to Wisconsin. Tr. p. 10. FCM Bailey added that, although Paternal Grandmother would be a suitable placement, switching placements would not be in the Children's "best interest[s]." Tr. p. 13. GAL Sauer also testified, agreeing with DCS's recommendation of the Wisconsin Placement "due to the young ages of the children" and because "they have bonded with maternal grandparents." Tr. p. 20.

Ultimately, the juvenile court approved the Wisconsin Placement and set the matter of Father's parenting time with the Children for determination at Father's dispositional hearing on September 27, 2012. At that hearing, FCM Bailey and GAL Sauer again testified that the Wisconsin Placement was in the "best interests" of the Children. Tr. pp. 43, 51. And likewise, in its dispositional order respective to Father, the juvenile court found "[t]he needs of the child[ren] for care, treatment, or rehabilitation" to be "placement with maternal grandparents, regular contact and monitoring by FCM and regular visitation with parents." Appellant's App. p. 72. The court ordered that the Children "remain in the placement of maternal grandparents," that the parties meet and come up with a parenting time plan for Father, and that DCS investigate Paternal Grandmother as a potential supervisor of Father's parenting time.

Father filed his appeal on October 26, 2012. Two weeks later, GAL Sauer reported to the juvenile court that the parties were unable to reach an agreement as to parenting time and, therefore, proposed her own parenting time recommendations based on the Indiana Parenting Time Guidelines for similar situations. On November 10, 2012, the court approved GAL Sauer's recommendations, granting Father parenting time with

the Children in Wisconsin on the first weekend of each month, and in Avon every third Thursday through Tuesday. Mother is responsible for transporting the Children to and from Avon for the latter.

## DISCUSSION AND DECISION

When reviewing a juvenile court's dispositional order "we apply a two-tiered standard of review and may not set aside the findings of judgment unless they are clearly erroneous." *In re A.C.*, 905 N.E.2d 456, 461 (Ind. Ct. App. 2009). We first determine "whether the evidence supports the factual findings and then whether the findings support the judgment. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard." *Id.*

### I. Reasonable Efforts

Father argues that the juvenile court's approval of the Wisconsin Placement is clearly erroneous because DCS failed to "make reasonable efforts to preserve and reunify" the family. Ind. Code § 31-34-21-5.5(b). "If a child has been removed from the child's home," Indiana Code section 31-34-21-5.5(b)(2) requires DCS to make reasonable efforts "to make it possible for the child to return safely to the child's home as soon as possible." Father claims that the Wisconsin Placement is not reasonable because it effectively prevents him from exercising parenting time with the Children, in frustration of DCS's plan for family reunification.

"In determining the extent to which reasonable efforts to reunify or preserve a family are appropriate … the child's health and safety are of paramount concern." Ind.

6

Code § 31-34-21-5.5(a). Here, FCM Bailey and GAL Sauer testified that the Wisconsin Placement is in the Children's "best interests." Tr. pp. 10, 13, 43, 51. Because we consider good health and safety necessarily subsumed in a child's best interests, *see* Ind. Code § 31-17-2-8 (listing factors relevant to child's best interests in custody determinations), we cannot say that DCS's reunification efforts are not reasonable. We emphasize that the juvenile court's November 10, 2012 order granted Father five days of parenting time in Avon every month and made Mother responsible for transporting the Children to and from these visits. Moreover, the testimony of FCM Bailey and GAL Sauer supports the court's finding in Father's dispositional order that "[t]he needs of the child[ren] for care, treatment, or rehabilitation are: placement with maternal grandparents, regular contact and monitoring by FCM and regular visitation with parents." Appellant's App. p. 72. Accordingly, the juvenile court's approval of the Wisconsin Placement is not clearly erroneous.

## II. Least Restrictive Setting

Father also argues that the juvenile court's approval of the Wisconsin Placement is clearly erroneous because it is neither the least restrictive setting available nor the one least disruptive to family life. He further claims that the placement interferes with family autonomy and fails to provide him with a reasonable opportunity to participate in the Children's lives. Father relies on Indiana Code section 31-34-19-6, but his argument is misguided. This statute provides:

> *If consistent with* the safety of the community and *the best interest of the child*, the juvenile court shall enter a dispositional decree that:
>     (1) is:

7

(A) in the least restrictive (most family like) and most appropriate setting available; and
(B) close to the parents' home, consistent with the best interest and special needs of the child;
(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

(emphasis added). Here, as outlined above, DCS presented evidence that the Wisconsin Placement was in the Children's "best interests," and the juvenile court issued findings to that end. Therefore, the court was not required to consider whether the placement was the least restrictive, disruptive, and interfering or whether it provided a reasonable opportunity for parent participation. The Wisconsin Placement is not clearly erroneous.

### III. Comparable In-State Home

Father next argues that the juvenile court erred by ordering an out-of-state placement without issuing a finding that there is no comparable home located within Indiana. Indiana Code section 31-34-20-1(b) prohibits a juvenile court from placing a child in a home or facility located outside Indiana unless:

(1) the placement is recommended or approved by the director of the department or the director's designee; or
(2) the juvenile court makes written findings based on clear and convincing evidence that:
(A) the out-of-state placement is appropriate because there is not a comparable facility with adequate services located in Indiana; or
(B) the location of the home or facility is within a distance not greater than fifty (50) miles from the county of residence of the child.

Father's argument relies on subsection (2) of this statute and is premised on his assertion that neither the DCS director nor the director's designee recommended or approved the

8

Wisconsin Placement under subsection (1). We conclude, however, that FCM Bailey constitutes the designee of the DCS director for the purpose of the Children's placement.[2] Given FCM Bailey's unqualified recommendation of the Wisconsin Placement, and especially considering her testimony that the placement is in the Children's "best interests," the court was not required to issue a finding regarding a comparable in-state home.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

---

[2] We note that FCM Bailey also recommended the Wisconsin Placement in her predispositional report, which was signed by her DCS supervisor.